# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ROCK HILL DIVISION

| | |
|---|---|
| **Travis Nicodemus Grady,** )<br>)<br>**Petitioner,** )<br>) Case No. 0:21-cv-01923-DCN-PJG<br>)<br>**v.** )<br>)<br>**Warden of Federal Correctional** )<br>**Institution-Bennettsville,** )<br>)<br>**Respondent.** )<br>) | |

## PETITIONER'S OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PETITION TO VACATE SENTENCE

Petitioner Travis Nicodemus Grady hereby files this opposition to the government's motions to dismiss and, alternatively, for summary judgment. He also incorporates a reply in support of his petition to vacate his sentence, which he submits this court should grant.

No court has addressed the merits of Mr. Grady's claim that the sentence enhancement in his case was improperly applied in light of both *Burrage v. United States,* 571 U.S. 204 (2014) and *Young v. Antonelli,* 982 F.3d 914 (4th Cir. 2020). This Court should do so, and it should vacate his sentence and resentence him absent the "resulting in serious bodily injury" enhancement.

The government's arguments against Mr. Grady's claim are unpersuasive. In disputing Mr. Grady's claim, the government reverses its stance on whether *Burrage* changed settled Fourth Circuit law and misapplies Fourth Circuit precedent. It also fails to recognize that Mr. Grady's *Burrage* claim implicates his enhanced statutory sentence range as well as the applicable

sentencing guidelines. The government's arguments do not defeat Mr. Grady's claim, and its motion to dismiss, and, alternatively, motion for summary judgment, should be denied.

First, the government contends that Mr. Grady's claim should be treated as a challenge to his conviction, implicating the standard set forth in *In re Jones,* 226 F.3d 328, 333-34 (4th Cir. 2000), rather than to his sentence, implicating the standard set forth in *United States v. Wheeler*, 886 F.3d 415, 429 (4th Cir. 2018). Because the "death results" provision is both an element of the enhanced offense and a sentencing enhancement, 2241 relief is warranted if either *Wheeler* or *Jones* is satisfied. Because Mr. Grady challenges his sentence in this case, *Wheeler* provides the applicable standard, and Mr. Grady satisfies its requirements. Even under the *Jones* standard, however, Mr. Grady prevails. Second, the government contends that because Mr. Grady has previously raised the *Burrage* issue, his § 2241 petition here is an abuse of the writ. That argument fails as well because no court has reached the merits of Mr. Grady's claim. Finally, any procedural default of the issue raised is excused.

**I.     The savings clause under Section 2255(e)**

While a petitioner must normally seek habeas relief under § 2255, "a federal prisoner may seek a writ of habeas corpus under § 2241 if it appears that the § 2255 remedy by motion is inadequate or ineffective to test the legality of his detention." *Young*, 982 F.3d at 917 (citations omitted) (cleaned up). The Fourth Circuit has developed tests to determine when this "saving clause" applies depending on whether the petitioner is challenging their conviction or their sentence.

The savings clause permits a § 2241 challenge to a petitioner's sentence under the *Wheeler* test when:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence;

    (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review;

    (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and

    (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

*Wheeler*, 886 F.3d at 429. The saving clause permits a § 2241 challenge to a petitioner's conviction under the *Jones* test when:

    (1) at the time of the conviction, settled law of this circuit or the Supreme Court established the legality of the conviction;

    (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and

    (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

*In re Jones*, 226 F.3d at 333-34.

    Mr. Grady's § 2241 claim satisfies both the *Wheeler* and the *Jones* tests, and relief is thus warranted.

## II.   Mr. Grady's *Burrage* claim satisfies the *Wheeler* test

    Mr. Grady faced a § 841(b)(1)(C) "death results" sentence enhancement above the ordinarily applicable statutory maximum. This result is erroneous under *Burrage,* made retroactive to Mr. Grady through *Young*. Therefore, *Wheeler* warrants relief under Mr. Grady's claim.

    The government argues that *Wheeler* is not applicable to Mr. Grady's case and that, if *Wheeler* is applicable, Mr. Grady is unable to show three of the four prongs. The government's arguments are unpersuasive.

### 1.   *Wheeler* is applicable to Mr. Grady's claim

    The government argues that *Wheeler* is inapplicable to Mr. Grady because he is unable to show that the application of the Guidelines at his sentencing rendered his sentence fundamentally

defective. However, Mr. Grady seeks relief under *Wheeler* for his *statutory* sentence enhancement as well as for the corresponding Guidelines enhancement. The Fourth Circuit has routinely applied the *Wheeler* test to § 2241 petitioners seeking relief from a statutory enhancement, including in *Wheeler* itself.[1] Mr. Grady was subjected to the "death results" statutory enhancement, and was sentenced above the otherwise applicable statutory maximum. The government's arguments against *Wheeler*'s application to the Guidelines are therefore inapposite, and *Wheeler* is applicable to Mr. Grady's claim.

2. **Mr. Grady satisfies *Wheeler*'s first prong under *Young* and *Patterson***

The Fourth Circuit has already recognized that, prior to *Burrage*, the circuit's settled law did not require a showing of but-for causation. *See Young*, 982 F.3d at 918 ("*Burrage* changed the law as to a statutory [death or serious bodily injury] provision . . . .").[2] In fact, the government conceded as much in *Young*. *Id.* at 917 (noting the government's concession that *Wheeler* prong one had been met). Nothing in the Fourth Circuit's decision in *Marlowe v. Warden, FCI Hazelton*[3] alters that ruling, nor do the decisions relied on by the government.

---

[1] *See, e.g.*, *Wheeler*, 886 F.3d at 434 (permitting a § 2241 petition "based on a sentence issued with an erroneously increase mandatory minimum" to pass through the savings clause); *Braswell v. Smith*, 952 F.3d 441 (4th Cir. 2020) (applying *Wheeler* where a § 2241 petitioner was subjected to an erroneous statutory sentence enhancement even though his actual sentence was within the correct statutory range); *Ham v. Breckon*, 994 F.3d 682 (4th Cir. 2021) (applying, but denying, a § 2241 claim under *Wheeler* where the petitioner was subjected to a statutory sentence enhancement).

[2] To the extent that the government disputes that this is one of *Young*'s holdings at all, this is inconsistent with later Fourth Circuit interpretations of *Young*. *See Ham v. Breckon*, 994 F.3d at 695 ("Unlike the decisions in *Simmons*, *Chambers*, *Clay*, *Bailey*, and *Burrage*, here, we cannot say *Mathis* changed this circuit's settled law.").

[3] *Marlowe v. Warden, FCI Hazelton*, 6 F.4th 562 (4th Cir. 2021).

4

### A. Prong one is satisfied by *Young*'s settled law holding

*Young*'s recognition that *Burrage* changed the settled law was not modified by *Marlowe*. Accordingly, the Fourth Circuit's decision in *Marlowe* does not alter this Court's analysis in this case.

The government offers a syllogism to show that Mr. Grady may no longer rely on *Young* to satisfy prong one: 1) Before *Marlowe*, *Young* recognized that the Fourth Circuit did not require a showing of but-for causation; 2) *Marlowe* substantively changed the *Jones* and *Wheeler* settled law inquiry under prong one; 3) therefore, *Young*'s settled law holding is flawed, and it can no longer be relied upon for a prong one showing. ECF No. 20-1 at 14.

This syllogism is not persuasive for two reasons. First, *Marlowe* merely clarified the settled law inquiry and did not purport to change it. *Marlowe*, 6 F.4th at 569-71 (clarifying the application of *Jones* prong one and how it has been applied to previous decisions). As such, the inquiry in *Young* did not apply a different test than the court in *Marlowe*. Second, and relatedly, the government's syllogism requires an assumption that *Young*'s holding was overruled by *Marlowe*. But one panel cannot overrule another, and to the degree that panel opinions conflict, the court must adhere to the earliest of the conflicting opinions. *McMellon v. United States*, 387 F.3d 329, 332-33 (4th Cir. 2004). *Marlowe* thus does not alter the Fourth Circuit's determination in *Young*.

### B. *Patterson* foreclosed the but-for argument pre-*Burrage*

The government argues that *United States v. Patterson,* 38 F.3d 139, 144, 144 n.6 (4th Cir. 1994), did not foreclose a but-for causation standard prior to *Burrage.* But the Fourth Circuit has already recognized that the government's interpretation of *Patterson* is incorrect. The question of causation was squarely before the Fourth Circuit in *United States v. Harris*, 225 F.3d 656, 2000 WL 1008840, at *1 (4th Cir. 2000) (table), and the Court in that case cited *Patterson* to hold that

5

"the statute does not suggest that that [the drug at issue] must be the sole cause of death or serious bodily injury." The *Harris* panel's reliance on *Patterson* for this point demonstrates that the Fourth Circuit did not require but-for causation prior to *Burrage.*

The cases upon which the government relies do not address this issue and are distinguishable. In *United States v. McIver*, the Fourth Circuit upheld a conviction where a pathologist had testified that the victim died "as a result of" the distributed drug. *United States v. McIver*, 470 F.3d 550, 565 (4th Cir. 2006). However, "as a result of" contains the same language in dispute under *Burrage*, and nowhere in the opinion does the court discuss but-for causation. In the *United States v. Schnippel*, the Fourth Circuit did indicate the government had to show the drugs were the but-for causation of the victim's death. *United States v. Schnippel*, 371 F. App'x 418, 419 (4th Cir. 2010) (unpublished). However, it does not appear that the proper standard of causation was actually an issue before the court. Rather, the appellant's argument was based on insufficiency of the evidence, challenging whether the government proved the source of the drugs. *Br. of the United States* at 14-17, *Schnippel*, 371 F. App'x 418 (No. 09-4710). Notably, the court relied only on a Seventh Circuit case[4] to outline what the government must prove, and its unpublished pronouncement should not be relied on, given that the issue was not before the court.

In light of the Fourth Circuit's holding in *Patterson* and its progeny, any attempt by Mr. Grady to make the but-for causation argument before the district court would have been futile, satisfying *Marlowe*.

---

[4] The case that the court cites to is *United States v. Hatfield*, 591 F.3d 945 (7th Cir. 2010).

### 3. Mr. Grady satisfies *Wheeler*'s second prong because no court has addressed the merits of Mr. Grady's *Burrage* claim and because he petitions for the first time since *Young* was announced

Mr. Grady satisfies *Wheeler*'s second prong because, after his first § 2255 petition, the Fourth Circuit held in *Young* that *Burrage* applies retroactively. *Wheeler*, 982 F.3d at 918.

The government nevertheless argues that Mr. Grady fails *Burrage*'s second prong because the decisions on Mr. Grady's prior habeas petitions already distinguished *Burrage* from Mr. Grady's case. Mr. Grady has previously filed a § 2255 petition, a motion to reconsider the decision on his first § 2255 petition, and a § 2241 petition prior to the Fourth Circuit's decision in *Young*. None of these decisions addressed whether Mr. Grady's Rule 11 admission at his guilty plea was tainted by the pre-*Burrage* misunderstanding of causation.

In his first § 2255 petition, the court held that Mr. Grady's petition was untimely because *Burrage* had not yet been applied retroactively. *United States v. Grady*, No. 5:10-CR-00002, 2015 WL 4773236, at *3 (W.D. Va. Aug. 12, 2015), *appeal dismissed*, 627 F. App'x 193 (4th Cir. 2015). The court then stated that, because Mr. Grady "presents no evidence showing that" other drugs intervened in the victim's serious bodily injury, Mr. Grady's case is distinguished from *Burrage*[5]. Both the courts hearing the motion to reconsider the § 2255 motion[6] and the prior § 2241 petition[7] relied solely on this language to reject Mr. Grady's claim.

The government's argument fails for two reasons. First, the prior court's assertions that they were distinguishing *Burrage* from Mr. Grady's case should be read as dicta. Second, the prior

---

[5] The district court's requirement that Mr. Grady produce evidence showing that other drugs intervened in the death flips the *Burrage* standard on its head; in *Burrage,* the Court required "evidence that [the decedent] would have lived but for his heroin use" in order to affirm the conviction, and in its absence, it reversed. *Burrage v. United States*, 571 U.S. 204, 219 (2014).
[6] *Grady*, No. 5:10-CR-00002, Order, ECF No. 92 (W.D. Va. filed July 12, 2017).
[7] *Grady v. Kreuger*, No. 2:18-cv-252, ECF No. 1 (S.D. Ind. Mar. 19, 2019).

7

decisions were issued before the Fourth Circuit's holding in *Young*, and thus resolved a different question than the one presented here under *Braswell*, 952 F.3d 441. The government's attempts to distinguish *Braswell* are unpersuasive.

### A. Mr. Grady's prior § 2255 and § 2241 petitions did not reach the question presented here

To the extent that the prior § 2255 and § 2241 holdings purported to rely on *Burrage*, that language should be disregarded as dicta. First, because *Burrage* had not yet been applied retroactively to Mr. Grady, relying on *Burrage* was not necessary to their decisions — their holdings did not need to consider the causation standard that Mr. Grady admitted to in order to reach their judgments.

Second, the prior courts misapplied *Burrage*, and relying on this misapplication would transform erroneous dicta into erroneous law. The first § 2255 court distinguished *Burrage* from Mr. Grady's case, in part, because Mr. Grady "presents no evidence" showing that other drugs intervened in the serious bodily injury. Both the subsequent § 2255 and § 2241 decisions dismissed Mr. Grady's *Burrage* claim solely on the basis that the first § 2255 motion purported to distinguish *Burrage*. However, this is not the inquiry that *Burrage* announced. The proper inquiry would have been into whether the pre-*Burrage* misunderstanding of the "results from" language in § 841(b)(1)(C) tainted Mr. Grady's Rule 11 admission.[8] That inquiry is what Mr. Grady respectfully asks this court, for the first time, to reach as permitted under *Young* and *Wheeler*.

---

[8] Mr. Grady admitted only that the serious bodily injury in this case "resulted from" the heroin. This is precisely the language that *Burrage* called into question. Because the settled law of the Fourth Circuit did not require but-for causation before *Burrage*, the language Mr. Grady admits to cannot be read on its own, as the previous courts did, as an admission of but-for causation.

### B. *Braswell* permits Mr. Grady's claim because he has not yet had the opportunity to challenge the legality of his sentence under *Burrage* and *Young*

Even if the reliance on *Burrage* in the prior § 2255 and § 2241 decisions is not dicta, Mr. Grady's current *Burrage* claim has still not yet been considered by any court. The last decision in this case was issued in 2019,[9] a year before the Fourth Circuit announced its decision in *Young*. By holding that *Burrage* applies retroactively, *Young* fundamentally changed the claim that Mr. Grady brings in this § 2241 petition.

For the first time, Mr. Grady has petitioned for relief under a legal framework that renders his conviction and sentence fundamentally defective. In *Braswell*, the Fourth Circuit held that "[i]t is the *retroactive* change, not just the change, in settled law that renders the sentence fundamentally defective." *Braswell*, 952 F.3d at 448. The petitioner in *Braswell*, like Mr. Grady, was also challenging a guilty plea in "the unique situation . . . . where the first § 2255 motion was filed between the change in substantive law and the declaration of its retroactivity." *Id.* at 448. The court did not find convincing the government's argument that Braswell had already had his claim considered and resolved: it was not until the retroactive change that Braswell was offered a meaningful opportunity to press his claim. *Id.* at 448-49.

So too here. Before *Young*, unless a court in one of Mr. Grady's earlier petitions had itself applied *Burrage* retroactively, it was not possible for Mr. Grady's claim to be heard at all. He had no claim. Now, *Young* calls into question the integrity of his admission at his guilty plea. As in *Braswell*, "'if [it was] held that a prisoner was foreclosed from seeking collateral relief from a fundamentally defective sentence, and 'through no fault of his own, has no source of redress,'" the purpose of habeas relief would go unfulfilled. *Id.* at 449 (citations omitted). This court should

---

[9] *Grady v. Krueger*, No. 2:18-cv-252, ECF 17 (S.D. Ind. Mar. 19, 2019).

provide Mr. Grady the opportunity to argue, in light of *Young*, that his Rule 11 admission was tainted by a pre-*Burrage* misunderstanding of the proper causation standard.

### C. *Braswell* is not distinguishable from this case

*Braswell* instructs that petitioners should be given the chance to test rules retroactively applicable to them. And, as the government admits, "Grady and Braswell look to be similarly situated . . . ." ECF No. 20-1 at 20. This should be enough for Mr. Grady to proceed on his claim. However, the government attempts to distinguish *Braswell* on the basis that the "petitioner's § 2255 motion was dismissed because the change in the law had not yet been declared retroactive, Grady's § 2255 claim was resolved on the merits." *Id.*

However, the basis of the § 2255 motion dismissal was not dispositive in *Braswell*. The court in *Braswell* held that it is the "change in settled substantive law and retroactivity determination" that makes a petitioner's claim eligible for habeas review. *Braswell*, 952 F.3d at 448. It was not relevant in *Braswell* how the prior court denied Braswell's motion. Until the point of retroactivity, it is simply not possible for a court to effectively consider a petitioner's habeas claim.[10] The basis for the prior denial was not relevant to the holding in *Braswell*, just that the prior court did not have access to the retroactivity holding. Thus, likewise, it is irrelevant how the court resolved the prior habeas petitions in this case: without a retroactive holding, Mr. Grady's claim could not have been adequately tested on his prior motions.

---

[10] *See Wheeler*, 886 F.3d at 429-30 ("Although Appellant actually raised a *Simmons* type claim in his first § 2255 on ineffective assistance of counsel grounds, the *Simmons* en banc decision itself could not have been invoked at that time because *it did not exist*." (emphasis added)); *Braswell*, 952 F.3d at 448 ("In this case and *Wheeler*, the petitioners in their first § 2255 motions could not rely upon the change in substantive law to correct their fundamental sentencing errors; thus, such motions were inadequate and ineffective to test the legality of their detention.").

### 4. Mr. Grady satisfies Wheeler's third prong because *Burrage* was a statutory case rather than a constitutional one

The government concedes that Mr. Grady "cannot meet the gatekeeping provisions of § 2255(h)(2)." ECF No. 20-1 at 23 n.12. This is all that is required to satisfy *Wheeler*'s third prong. *Wheeler*, 886 F.3d at 429 ("(3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for the second or successive motions;").

### 5. Mr. Grady satisfies *Wheeler*'s fourth prong because he was erroneously subjected to a higher statutory minimum and maximum

As discussed *supra* Part II.1., Mr. Grady challenges the erroneous pre-*Burrage* misunderstanding of the "death results" statutory enhancement. The government's arguments that Mr. Grady fails this prong because he was sentenced under the advisory Guidelines are simply inapplicable.

Both the statutory minimum and maximum applicable to Mr. Grady at the time of his sentence were increased due to the *Burrage* error. Without a death or serious bodily injury sentence enhancement, Mr. Grady would have been facing a statutory range of 0 to 240 months in prison. Because Mr. Grady was sentenced under the statutory enhancement, however, he instead faced a range of 240 months to life in prison. And he was sentenced above the otherwise applicable statutory maximum: 262 months. Under *Wheeler*, even an increase in the statutory sentencing floor renders a sentence defective.[11] Here, Mr. Grady faced an erroneous statutory minimum *and* maximum, and is thus not required to show more to satisfy the fourth prong under *Wheeler*.

Mr. Grady's sentence was inappropriately enhanced under a pre-*Burrage* misunderstanding of the § 841(b)(1)(C) causation element. He petitions for relief for the first time

---

[11] *Wheeler*, 886 F.3d at 431 ("[A]n 'erroneously-imposed sentencing floor is problematic' when it comes to habeas cognizability . . . ." (citations omitted)).

11

after the Fourth Circuit held *Burrage* retroactive in *Young*. He is therefore warranted relief under *Wheeler*.

**III.    Mr. Grady's *Burrage* claim also satisfies the *Jones* test**

Mr. Grady's *conviction* under the "resulting in death" enhancement was also based on the error corrected in *Burrage* and *Young*. Therefore, Mr. Grady's *Burrage* claim also satisfies the *Jones* test, which independently warrants relief on his conviction.

The government argues that Mr. Grady is unable to meet the first and second *Jones* prongs. They concede that Mr. Grady satisfies the third *Jones* prong.[12]

**1. Mr. Grady satisfies *Jones*' first prong under *Young* and *Patterson***

Mr. Grady and the government agree that "[t]he first prongs of *Jones* and *Wheeler* are materially indistinguishable." ECF No. 20-1 at 19. As such., Mr. Grady incorporates Section II.2. herein. *Young* has already held that, prior to *Burrage*, the circuit's settled law did not require a showing of but-for causation, and that holding was not changed by *Marlowe*. However, even if it had been, it would have been futile for Mr. Grady to argue that but-for causation was an element of his conviction. Mr. Grady therefore satisfies *Jones*' first prong.

**2. Mr. Grady satisfies *Jones*' second prong under *Hahn* and *Braswell***

As discussed *supra* Part II.3., *Burrage* and *Young* changed the substantive law of the Fourth Circuit. Further, the change in § 841(b)(1)(C)'s interpretation in *Burrage* and *Young* renders "previously illegal conduct no longer a source of liability," satisfying *Jones*' second prong under the Fourth Circuit's holding in *Hahn v. Moseley*. 931 F.3d 295, 303 (4th Cir. 2019).

---

[12] ECF No. 20-1 at 12 (arguing that Mr. Grady only fails to meet the first and second prongs of *Jones*)

The government argues that Mr. Grady fails this prong because *Burrage* was issued before Mr. Grady's § 2255 motion and because his claims have already been decided in three prior habeas petitions and thus he cannot show that "the conduct of which he was convicted" is "no longer criminal." ECF No. 20-1 at 17. The government's arguments fail because of the Fourth Circuit's holding in *Hahn* and because Mr. Grady brings a different claim than those brought in his prior habeas petitions, *see supra* Part II.3.

### A. The Fourth Circuit's holding in *Hahn* renders the enhancement Mr. Grady was convicted of no longer criminal

In *Hahn* the Fourth Circuit held that "[a] petitioner satisfies [the second *Jones* prong] if the substantive change in the law makes previously illegal conduct no longer a source of criminal liability." *Hahn*, 931 F.3d at 303. Where a court has announced "a new statutory scheme of interpretation" that is applicable to all cases brought under the statute, the "analysis applies . . . regardless of the particular facts of the case." *Id*.

*Burrage* and *Young* did just this. Before *Burrage*, in the Fourth Circuit, individuals could be charged under the "death results" enhancement with just a showing of contributory causation. *See supra* Part II.1. After *Young*, the conduct considered criminal under § 841(b)(1)(C) narrowed: those who contributed to death or serious bodily injury, but not but-for caused it, could no longer be subjected to that particular enhancement. Further, because *Burrage* and *Young* announced "a new statutory scheme of interpretation," *Hahn*, 931 F.3d at 303, *Burrage* cannot be distinguished from Mr. Grady's case. The analysis applies universally to those convicted under § 841(b)(1)(C)'s "death results" enhancement. *See id*; *Young*, 982 F.3d at 918.

### B. The plain language of the *Jones* test and the reasoning in *Braswell* require both a substantive change in the law and retroactivity under prong two

The second prong of the *Jones* test requires that "subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed *such that* the conduct of which the prisoner was convicted is deemed not to be criminal." *In Re Jones*, 226 F.3d at 334 (emphasis added). *Burrage* did not automatically apply retroactively. The plain language of the *Jones* test requires that the change in the law actually ("such that") deemed the conduct of the particular prisoner no longer criminal. It was not until the point of retroactivity in *Young* that this change in the substantive law took place for Mr. Grady.

As discussed *supra* Part II.3.B. & II.3.C., the reasoning justifying *Braswell*'s holding that retroactivity is the dispositive factor in *Wheeler's* second prong applies just as well to *Jones*' second prong. As the *Braswell* court pointed out, it would be strange for the law to punish petitioners for not waiting until the point of retroactivity to file a § 2255 petition. *Braswell*, 952 F.3d at 449-50. Further, the point of habeas corpus is to give prisoners a "meaningful opportunity" to present their claims in court, which would be undermined if a *Jones* petitioner could not press a claim simply because "the state of the law at the time precluded him from using [the rule not yet applied retroactively] in his favor." *Id*. at 449. As such, even though *Burrage* was announced prior to Mr. Grady's first § 2255 petition, he still satisfies *Jones*' second prong because *Burrage* was not held retroactive until after all of his previous habeas petitions were resolved.

### IV. Mr. Grady's Claim is Not an Abuse of Writ and Was Not Procedurally Defaulted

The government's abuse of the writ and procedural default arguments should fail for the same reasoning articulated *supra* Part II.3. Abuse of the writ principles apply only where a petitioner "raises claims that could have been raised in prior petitions." *In re Wright*, 826 F.3d 774, 783-84 (4th Cir. 2016). Here, as the Fourth Circuit explained in *Braswell*, Mr. Grady's claim could

14

not have been brought until *Burrage* had been held to be retroactive. *Braswell*, 952 F.3d at 448; *supra* Part II.3. [13]

The government's procedural default argument also fails. As an initial matter, the procedural default question is essentially a component of the "settled law" prong of the *Wheeler* and *Jones* tests, as the Fourth Circuit recognized in *Marlowe*. *Marlowe*, 6 F.4d at 571 ("This reading of *Jones's* "settled law" requirement is also consonant with Section 2255 and the nature of the habeas remedy . . . . Principles of procedural default sharply limit a petitioner's ability to raise on collateral review claims not raised in his initial criminal proceeding or on direct appeal . . . . The exclusion of previously available claims from Section 2255's reach compels a similar approach to the savings clause.") The procedural default inquiry is thus already incorporated into the *Jones* and *Wheeler* tests.

Even if this Court determines it is a separate inquiry, however, any default by Mr. Grady is excusable. First, Mr. Grady can show cause for any default. Mr. Grady's guilty plea and sentencing took place in 2010, sixteen years after the Fourth Circuit's holding in *Patterson* (and ten years after the Fourth Circuit confirmed the inapplicability of but-for causation in *Harris*, 2000 WL 1008840, at *1). During that time, it was the settled law of the Fourth Circuit. The government points only to one unpublished opinion, *Schnippel*, as holding that but-for causation was necessary,

---

[13] Mr. Grady's first § 2241 claim was brought while his was held in custody in the Seventh Circuit. The government contends that Mr. Grady should not be given "another opportunity to bring his *Burrage* claim under the savings clause simply because the Bureau of Prison has transferred him . . . ." ECF No. 20-1 at 25. But the district court in Indiana simply relied on Mr. Grady's prior § 2255 petition to determine that his § 2241 petition failed, without considering the merits of the claim. *See* Ex. A, Order on § 2241. Even where a § 2241 petition has been fully considered and decided by a prior court, § 2244 does not prohibit another district court from considering the question anew when a petitioner is transferred. *Simcox v. Harris*, 324 F.2d 376, 378 (8th Cir. 1963). Given that neither court addressed the issues currently before this Court, there is nothing improper in Mr. Grady's current petition.

15

and as discussed above, the proper standard of causation was not a question before the Court in that case. This is far from "the Federal Reporters [being] replete with cases" arguing that § 841(b)(1)(C) required but-for causation. *Bousley v. United States*, 523 U.S. 614, 622 (1998). This case is thus also distinguished from *United States v. Sanders* because, there, the court found that the *Apprendi*-style claim had been made "ever since the Sentencing Guidelines came into being . . . " *United States v. Sanders*, 247 F.3d 139, 145 (4th Cir. 2001). In the context under which Mr. Grady pleaded guilty, the legal basis for the claim was "not reasonably available to counsel." *Bousley*, 523 U.S. at 622.

Second, the pre-*Burrage* erroneous understanding of the "results from" element created actual and substantial disadvantage in his case. *United States v. Frady*, 456 U.S. 152, 170 (4th Cir. 1982). As discussed *supra* Part II.3., the issue in this case is different from the ones previous courts have considered on habeas review. Thus, the government's reliance on them to show there has not been actual prejudice is irrelevant. Rather, in the Fourth Circuit's decision in *Hahn*, it explained that statutory interpretation decisions, such as *Burrage*, that categorically narrow the conduct covered by a statute renders the excluded conduct legal. *Hahn*, 931 F.3d at 303; *supra* Part III.2. As such, Mr. Grady faces actual prejudice because the misunderstanding in the language meant that he faced criminal liability for conduct that is not illegal.

Finally, Mr. Grady is actually innocent of the "resulting in death" enhancement in the wake of *Burrage*, because the conduct previously subjecting him to that enhancement—providing narcotics that contributed to an overdose but were not the but-for cause—no longer subjects him to that enhancement.

## CONCLUSION

Section 2255 is inadequate and ineffective to test the legality of Mr. Grady's sentence. For the above reasons, this Court should grant Mr. Grady's § 2241 motion, vacate his sentence under the "resulting in serious bodily injury" enhancement, and resentence him based on the offense of heroin distribution under 21 U.S.C. § 841(b)(1)(C).

Respectfully submitted,

S/ KIMBERLY H. ALBRO
Assistant Federal Public Defender
1901 Assembly Street, Suite 200
Columbia, South Carolina 29201
Telephone: (803) 765-5088
ATTORNEY ID# 11152
Email: Kimberly_Albro@fd.org

Columbia, South Carolina
October 29, 2021